# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:04CV216

| | |
|---|---|
| **DENISE H. SPEER,** ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | **MEMORANDUM** |
| ) | **AND ORDER** |
| **JO ANNE B. BARNHART,** ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**THIS MATTER IS BEFORE THE COURT** on "Plaintiff's Motion for Summary Judgment and Motion to Expand the Record" (Document No. 14) and "Plaintiff's Memorandum in Support..." (Document No. 15), filed on December 3, 2004, by Denise Speer, and the Commissioner's "Motion for Summary Judgment" (Document No. 19) and "Memorandum in Support..." (Document No. 20), both filed March 2, 2005. The parties have consented to magistrate jurisdiction under 28 U.S.C. § 636(c), and these motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned finds that the evidence offered by the Plaintiff is properly in the record; however, the Commissioner's decision to deny the Plaintiff's Social Security disability benefits is supported by substantial evidence. Accordingly, the undersigned will <u>grant</u> the Plaintiff's motion to the extent that the motion requested an expansion of the record to include the evidence submitted as Attachment A; <u>deny</u> the Plaintiff's motion in respect to summary judgment; <u>grant</u> the Commissioner's motion for summary judgment; and <u>affirm</u> the Commissioner's decision.

## I. PROCEDURAL HISTORY

On February 1, 2001, Ms. Speer applied for Disability Insurance Benefits, alleging onset of

disability on May 8, 2000 due to fibromyalgia, generalized anxiety, and chronic fatigue syndrome. Ms. Speer's claim was denied initially and again on reconsideration ( R. 87-89).

Ms. Speer requested a hearing, which was held on October 30, 2002. On January 30, 2003, an Administrative Law Judge ("ALJ") denied Ms. Speer's claim. ( R. 11-25). On February 11, 2003, Ms. Speer requested an Appeals Council review. ( R. 9-10). On February 27, 2004, the Appeals Council denied her request for review, leaving the January 30, 2003, ALJ's decision as the Commissioner's final decision. ( R. 4-6).

Ms. Speer filed this action on May 3, 2004, and the parties' cross-motions for summary judgment are now ripe for this Court's consideration.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986), the Fourth Circuit defined "substantial evidence" as

> being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Id.* (quoting *Perales*, 402 U.S. at 401).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456 (4th Cir. 1990); *see also Smith v. Schweiker*, 795 F.2d

343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456; *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion.") Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

#### Expansion of the Record

Ms. Speer contends that the record should be expanded to include what she submitted as Attachment A, consisting of two pages of evidence from Carolina Respiratory Specialists, dated September 6, 2001. She states that on May 22, 2002, the transmitted document was marked "received" by the Office of Hearings and Appeals. However, the submitted evidence is missing from this record. The Commissioner has no objection to the expansion of the record.

Accordingly, the undersigned finds that Ms. Speer's evidence submitted as Attachment A is properly before the Court.

#### Disability Determination

The question before the ALJ was whether at any time Ms. Speer became "disabled" as that

term is defined for Social Security purposes.[1] The ALJ considered the evidence and concluded in his written opinion that Ms. Speer had fibromyalgia, as well as anxiety with depression, which are "severe" impairments within the regulatory meaning; that no impairment or combination of impairments meets or medically equals one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4; that Ms. Speer retains the residual functional capacity to perform "sedentary" work which is relatively low stress and does not require sustained "skilled" concentration; that Ms. Speer was unable to perform any of her past relevant work; but that Ms. Speer was capable of making a successful adjustment to work that exists in significant numbers in the economy. Accordingly, the ALJ concluded that Ms. Speer was not under a disability as defined for Social Security purposes.

Ms. Speer contends on appeal that the ALJ erred (1) by not assigning greater weight to the opinions of three physicians who examined Ms. Speer; (2) by disregarding the results of Ms. Speer's tilt table test; (3) by finding her not credible with respect to her subjective complaints; and (4) in concluding that Ms. Speer was able to perform substantial gainful activity which exists in large numbers in the economy. The undersigned concludes, however, that substantial evidence supports the ALJ's findings regarding Ms. Speer's residual functional capacity. The undersigned further concludes that substantial evidence supports the ALJ's findings regarding Ms. Speer's ability to perform substantial gainful activity which exists in significant numbers in the economy, as well as

---

[1] Under the Social Security Act, 42 U.S.C. § 301, *et seq.*, the term "disability" is defined as an:
> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...

*Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995)

4

the ultimate conclusion that Ms. Speer was not disabled.

## Residual Functional Capacity

The Social Security Regulations define "residual functional capacity" as what "[a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b). The residual functional capacity assessment is based on all the relevant evidence, including observations by treating or examining physicians. 20 C.F.R. § 404.1545(a).

## Opinion of Treating Physician

In challenging the ALJ's assessment of her residual functional capacity, Ms. Speer contends that the ALJ erred by failing to give controlling weight to the opinion of Dr. Jemsek, her treating physician. The Fourth Circuit has established that a treating physician's opinion need not be afforded controlling weight. *Hunter*, 993 F.2d at 35. Under the traditional application of the treating physician's rule, a court is generally required to give a treating physician's opinion greater weight, and may grant that opinion controlling weight. *Coffman v. Bowen,* 829 F.2d 514, 517 (1987). Furthermore, the court may only disregard such testimony if there is persuasive contrary evidence. *Coffman,* 829 F.2d at 517. Under regulations adopted in 1991, a treating physician's opinion on the nature and severity of the alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *See* 20 C.F.R. §§ 404.1527(d)(2); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).

Thus, in contrast to the common law rule where treating sources' opinions were generally

5

given controlling weight at the apparent discretion of the ALJ, regulations adopted in 1991 grant treating physicians' opinions controlling weight "only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." *Ward v. Chater*, 924 F.Supp. 53, 55 (W.D.Va. 1996); *see also Johnson v. Barnhart*, No. 305CV00030, 2006 WL 840315 (W.D.Va. March 21, 2006). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Mastro*, 270 F.2d at 178 (citation omitted).

### Dr. Jemsek

Ms. Speer began seeing Dr. Jemsek on November 20, 2000. On her first visit, Dr. Jemsek noted an impression of immune dysfunction syndrome (which he equates with Chronic Fatigue/Immune dysfunction syndrome - see R. 241) with a strong fibromyalgia component, cognitive effect and sleep disorder, recurrent folliculitis presumed staphylococcal colonization, GERD, history of anxiety, panic disorder associated with Immune dysfunction syndrome, allergic rhinitis, and mixed muscle contraction of migraine syndrome. On March 29, 2001, Dr. Jemsek noted that Ms. Speer is "certainly in no condition to do the job for which she was trained, nor any other position which requires any more than a minimal amount of concentration, or any sustained physical activity whatsoever." ( R. 238). Ms. Speer continued to see Mr. Jemsek, and he made further comments encouraging her pursuit of disability. Ms. Speer argues that the ALJ improperly disregarded the evidence presented by Dr. Jemsek, citing its preparation for use in her disability claim. The Court disagrees with Ms. Speer.

The ALJ properly considered the evidence presented by Dr. Jemsek. The ALJ first states that

he has "not given any weight to the opinions of Dr. Jemsek" ( R. 19), then later more clearly states that he has "given little weight to the opinion of Dr. Jemsek, because most of the claimant's visits were for the purpose of obtaining support for her disability applications" ( R. 20). While it would be error to disregard objective medical evidence on the basis that it was prepared for use as evidence in pursuit of a claim, *see Wooldridge v. Bowen*, 816 F.2d 157, 161 n.4 (4th Cir. 1987), here, instead, the ALJ expresses concern with the lack of objective evidence which came from Ms. Speer's visits with Dr. Jemsek. The ALJ demonstrates that their time was spent completing forms and discussing the ongoing disability action, rather than examining Ms. Speer's claims with objective tests. The ALJ notes several visits to Dr. Jemsek's office, citing notes which indicate the primary purpose of the visit was concern over disability. Furthermore, in regard to a letter written by Dr. Jemsek on behalf of Ms. Speer to Ms. Speer's insurance company expressing his own indignance, the ALJ notes that, "[Dr. Jemsek's] letter does not describe any specific functional limitations and suggests that she is disabled by her mental problems...[T]his is not supported by the records of the claimant's psychologist, Dr. Simpson" ( R. 20). It appears clear to this Court that the ALJ's concern was over a lack of objective findings to support opinions seemingly based on the subjective complaints of Ms. Speer.

Because Dr. Jemsek's statements on disability were not supported by objective findings, Ms. Speer's contention is without merit. Had acceptable findings supported Dr. Jemsek's opinion, the ALJ would have had to grant that opinion controlling weight. Instead, the undersigned concludes that the ALJ's treatment of Dr. Jemsek's opinion was proper.

**Opinions of Examining Physicians**

Ms. Speer further contends that the ALJ improperly rejected the opinions of examining

physicians, Dr. Preston and Dr. Onischenko. As the Fourth Circuit noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in medical evidence." *Seacrist*, 538 F.2d at 1056-57. Moreover, it is the decision of the Commissioner to make findings of fact and to resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456; *King,* 599 F.2d at 599; *Seacrist*, 538 F.2d at 1056-67.

### Dr. Preston

In her report, Dr. Preston rated the claimant at a 20 in regard to her physical disability, which indicates she is confined to bed most of the day and rarely able to leave the house, and at a 10 in regard to her mental disability, which indicates that she has marked cognitive limitations, cannot travel outside the home, and is bedridden the majority of the time ( R 264-282). Ms. Speer argues that the ALJ improperly disregarded these findings on the basis that the reports were developed in preparation for litigation. The Court disagrees with Ms. Speer.

The ALJ considered the evidence in the record from Dr. Preston's treatment of Ms. Speer. However, the ALJ did not give any weight to Dr. Preston's opinion. While the ALJ did note that Dr. Preston was not a treating physician, and only evaluated the claimant at the request of her attorney "in order to provide evidence supporting her disability claim" ( R. 21), it is the paragraph that follows which clearly explains the reasons for the ALJ's disregard of Dr. Preston's opinion. In his decision, the ALJ notes that Dr. Preston's report is "conclusory," "is not supported by any functional tests," is "grossly exaggerated when compared to the testimony and objective medical evidence," and is "inconsistent with the functional tests by Dr. Baumblatt, who found a normal range of motion, full muscle strength with no atrophy, and no neurological deficits, and are inconsistent with the findings of the claimant's treating physicians, Dr. Jones and Dr. Wilson, and her treating psychologist, Dr.

8

Simpson" ( R. 21). Since the ALJ's opinion is supported by substantial evidence, there is no error in affording no weight to the opinion of Dr. Preston.

### Dr. Onischenko

Dr. Onischenko wrote that the claimant's test scores "suggested dysfunctionality and reduced efficiency and that she was not functioning at a level of cognitive ability and intellectual competency that was characteristic of her pre-morbid status" ( R. 21-2). Ms. Speer contends that like Dr. Preston, Dr. Onischenko's opinion was improperly disregarded on the basis that his findings were made solely in preparation for litigation. Again, the Court disagrees with Ms. Speer.

While the ALJ again noted that Dr. Onischenko was not a treating physician, but rather evaluated the claimant at the request of her attorney in order to provide evidence, this does not appear to be the reason for the ALJ's disregard of this opinion. Rather, the ALJ noted that despite Dr. Onischenko's findings, "the psychological tests showed that she was functioning in the average range of intelligence" ( R. 22). Furthermore, the ALJ noted that the test scores supported his conclusion that while Ms. Speer was unable to meet the mental demands of her past "skilled" work, she was still able to perform "unskilled" or "semi-skilled" work. Thus, the Court finds no error with the ALJ's assignment of weight to Dr. Onischenko.

### Tilt Table Test

Additionally, Ms. Speer objects to the ALJ's disregard of her tilt table test. At the request of her attorney, Ms. Speer underwent a tilt table test, designed to examine an abnormal blood pressure response, which demonstrated a potentially abnormal response with provocation by sublingual nitroglycerine ( R. 262-63). The ALJ disregarded this result, stating, "[t]he tilt table test was clearly performed in anticipation of litigation rather than for treatment of any symptoms or

limitations" ( R. 18). Ms. Speer contends that the ALJ improperly disregarded the results of the tilt table testing by disregarding them on the basis that they were done in preparation for litigation. The Court assigns error with regard to the ALJ's disregard of this testing. However, the Court finds that the error was harmless.

There is no basis to disregard medical testing on the grounds that it was performed in anticipation of, or in preparation for, a plaintiff's claim. As noted in *Wooldridge,*

> [t]he fact that this report was directed to the claimant's attorney in furtherance of Wooldridge's claim likewise does not bar its admission. Such a practice is routine in social security proceedings. In fact, all of the medical reports prepared by consultative physicians are done at the request of the Secretary to assist in determining a claim. We can perceive no basis in the statute or case law for excluding medical reports of any examining physician on the ground that they were prepared for purposes of the claim being litigated.

816 F.2d 157, 160 n.4. Likewise, there is no basis for disregarding the results of the tilt table test. The ALJ cites no other objective medical evidence which conflicts with the tilt table test or any other reasons for disregarding its results. However, because the result of the tilt table test was merely potentially abnormal, there is no suggestion this evidence warrants remand of the case.

**Subjective Complaints of Non-Exertional Symptoms**

Ms. Speer also objects to the ALJ's assessment of her subjective complaints of non-exertional symptoms. Specifically, Ms. Speer contends that the ALJ engaged in "sit and squirm jurisprudence," *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), by disregarding her subjective complaints based on observations of Ms. Speer's apparent comfort and cognitive ability while on the witness stand. The undersigned concludes, however, that the ALJ's treatment of those complaints was proper.

The determination of whether a person is disabled by non-exertional symptoms is a two-step

process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996) (citing 20 C.F.R. § 416.929(b), § 404.1529 (b); 42 U.S.C. § 423(d)(5)(A)). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain [or other symptoms], and the extent to which it affects his ability to work." *Craig*, 76 F.3d at 595 (citing 20 C.F.R. § 416.929(c)(1), § 404.1529(c)(1)). The regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimants daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

*Craig*, 76 F.3d at 595 (citations omitted). Furthermore, "it is not reversible error for an ALJ to consider a claimant's demeanor when he has already determined that the claimant's alleged level of pain is inconsistent with the objective medical evidence." *Schrewsbury v. Chater*, No. 94-2235, 1995 WL 592236, at *9 n.7 (C.A.4 (W.Va.) Oct. 6, 1995).

The record contains evidence of Ms. Speer's fibromyalgia, anxiety with depression, and other disorders, which could be expected to produce some of the pain claimed by Ms. Speer, and the ALJ - by concluding that Ms. Speer suffered from severe impairments - implicitly found that Ms. Speer could satisfy the first prong of the test articulated in *Craig*.

The ALJ next evaluated the "intensity and persistence" of her symptoms and the extent to which it affected her ability to work. *Craig*, 76 F.3d at 595 (citations omitted). The ALJ noted that

11

"[t]he testimony of the claimant, her husband, and her mother was not credible" ( R. 17). The ALJ observed that:

> The claimant's testimony concerned her functional limitations was clearly exaggerated. She was asked at the hearing if she wanted to get up and she said yes, but did not do so. She said [sic] in apparent comfort for approximately 40 minutes, throughout her entire testimony. Despite her complaints of cognitive problems, she was responsive and articulate.

( R. 17). However, the ALJ further noted that "the claimant's testimony concerning the intensity and persistence of her fatigue appears exaggerated when compared to her statements to Dr. Wilson and Dr. Jones," and "the claimant's testimony concerning the intensity of her pain is clearly contradicted by her failure to pursue physical therapy or other treatment options and her failure to follow the advice of Dr. Jones in regard to exercise" ( R. 18).

As noted above, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in medical evidence." *Seacrist*, 538 F.2d at 1056-57. Moreover, it is the decision of the Commissioner to make findings of fact and to resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456; *King,* 599 F.2d at 599; *Seacrist*, 538 F.2d at 1056-67. The Court concludes the ALJ properly considered and evaluated the evidence to resolve inconsistencies that may have been present regarding Ms. Speer's subjective complaints. Given the objective evidence cited by the ALJ to support his decisions, the Court finds there is no error with regard to the ALJ's decision on the amount of credibility to grant Ms. Speer's testimony, nor the ALJ's observation of Ms. Speer's demeanor while testifying.

**Whether Substantial Evidence Supports the ALJ's Finding that Ms. Speer was Capable of Making a Successful Adjustment to Work in the National Economy**

In the sequential evaluation process employed by the Social Security Administration, once

a plaintiff establishes that she is unable to return to her past relevant work, the burden shifts to the Commissioner to establish that there are other jobs in the national economy that she can perform. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). In making that determination, the ALJ will look at the tables in Appendix 2, which indicate that the disability determination should be based on various combinations of age, education and past vocational experience in conjunction with the residual functional capacity of the plaintiff. *Hall*, 658 F.2d at 265. If the plaintiff suffers from solely non-exertional limitations, or has a combination of exertional and non-exertional limitations, the ALJ must not use the Medical-Vocational Guidelines exclusively and must make a full and individualized consideration of all the relevant vocational factors. *Grant v. Schweiker*, 699 F.2d 189, 192 (4th Cir. 1983). If the Commissioner is to prevail, the Commissioner must show - by expert vocational testimony - that, despite the combination of exertional and non-exertional impairments, the plaintiff is capable of performing work that exists in significant numbers in the national economy. *Grant,* 699 F.2d at 192.

Ms. Speer argues that - even given a residual functional capacity for "sedentary" work which is low stress and does not involved "skilled" concentration - she is unable to perform the occupations adopted by the ALJ. Upon testimony from the vocational expert, the ALJ adopted two positions - telephone solicitor and food checker - which would be appropriate for Ms. Speer and which exist in significant numbers in the economy. Ms. Speer contends that both positions, as they involve contact with the general public, are inherently stressful. Additionally, Ms. Speer contends that following the implementation of the Federal Do-Not-Call Implementation Act, 15 U.S.C. 6101, the number of telephone solicitation jobs no longer exist in the numbers relied on by the ALJ in making his decision. However, there is nothing to substantiate these contentions. The ALJ based his

13

decision on the testimony of a vocational expert who offered evidence of specific jobs that such an individual as Ms. Speer would be able to perform and the number of such jobs existing. Based on the foregoing, the undersigned concludes that substantial evidence supports the ALJ's determination that Ms. Speer could perform work which exists in significant numbers in the national economy.

Because substantial evidence supports both the finding that Ms. Speer has a residual functional capacity for "sedentary" jobs which would not require "skilled" concentration, and that Ms. Speer could perform work which exists in significant numbers in the national economy, Ms. Speer is not disabled for Social Security purposes.

## IV. ORDER

Accordingly, **IT IS HEREBY ORDERED THAT**

1. "Plaintiff's Motion for Summary Judgment and Motion to Expand the Record" (Document No. 14) is **GRANTED** in part, that is, to the extent that it requests an expansion of the record to include the evidence submitted as Attachment A, and **DENIED** in all other respects; the Commissioner's "Motion for Summary Judgment" (Document No. 19) is **GRANTED**; and the Commissioner's decision is **AFFIRMED**.

2. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

Signed: July 12, 2006

*[signature]*

David C. Keesler
United States Magistrate Judge